UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

OSCAR GARCIA,

               Plaintiff,

vs.                                Case No.   2:11-cv-56-FtM-29DNF

LIEUTENANT   AUSTIN;   CORRECTIONAL
OFFICER WILSON; CORRECTIONAL OFFICER
ANTHONY;   CORRECTIONAL   OFFICER
BOSTIC,

               Defendants.
_____

**OPINION AND ORDER**

**I.   Status**

This matter comes before the Court upon review of the Motion to Dismiss (Doc. #49, Mot. Dismiss), filed on behalf of Defendants Bostic, Anthony, and Austin.  Plaintiff was given admonitions and a time frame to file a response to a dispositive motion.  See Doc. #32.  Plaintiff chose not to file a response to the Motion.  Also before the Court is the Motion to Dismiss (Doc. #58, Wilson Mot. Dismiss) filed on behalf of Defendant Wilson.  Plaintiff filed a response in opposition to Wilson's Motion (Doc. #69, Response).  Additionally pending is Plaintiff's "motion to recall order reinstate [sic] Defendant Hoopes in original complaint to this Court" (Doc. #66), which the Court construes as a motion for reconsideration of the Court's dismissal of Defendant Hoopes

pursuant to Fed. R. Civ. P. 4(m).[1]   These matters are ripe for review.

## II. Facts

Oscar Garcia, a *pro se* plaintiff who is in the custody of the Secretary of the Florida Department of Corrections, initiated this action by filing a Civil Rights Complaint Form (Doc. #1) pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of Florida on August 17, 2010.  <u>See</u> docket.  The Southern District transferred the case to this Court on February 7, 2011.  Doc. #5, #14.  Plaintiff is proceeding on his Amended Complaint (Doc. #6, hereinafter "Amended Complaint").  The Amended Complaint contains attachments, which include various inmate grievances from the year 2010 and responses thereto.

The Amended Complaint names the following correctional officers who worked at Charlotte Correctional Institution as Defendants: Lieutenant Austin, Correctional Officer Wilson, Correctional Officer Anthony, and Correctional Officer Bostic.  <u>See</u> <u>generally</u> Amended Complaint.  The Defendants are sued in their individual capacities.  <u>Id.</u>; <u>see</u> <u>also</u> Response at 9 (clarifying that all Defendants are named in their individual capacities only).  According to the Amended Complaint, on various occasions during

---

[1]Defendants Austin, Anthony, and Bostic filed a response in opposition to the Plaintiff's motion for reconsideration, only to the extent it seeks appointment of counsel.  <u>See</u> Doc. #67.  The Court does not construe the motion for reconsideration to include a motion to appoint counsel.

2008 Plaintiff was beaten to the point of unconsciousness, physically assaulted, verbally harassed, and threatened with retaliation and future beatings if he reported the incidents. See Amended Complaint at 4. The following factual narrative is presumed true at this stage of the proceedings.

## A. March 29, 2008 Beating Incidents: Defendants Austin, Wilson, and Anthony

On March 29, 2008, Officer Hoopes[2] directed Plaintiff to "pick-up trash." Amended Complaint at 5. Plaintiff alleges that Hoopes slammed Plaintiff to the ground, handcuffed his hands behind his back, and after picking him up from the ground, punched him in the mouth. Id. After this initial beating, Plaintiff claims that Defendants Wilson and Anthony entered the area with other unidentified officers and joined Hoopes in continuing to kick and punch Plaintiff until he lost consciousness. Id.

When Plaintiff regained consciousness, Plaintiff alleges that Lieutenant Austin "came and stated" "the next time I ask for your name, you won't forgot to say sir, will you?" Id. Defendant Austin then asked Plaintiff for his name and inmate number. Id. Plaintiff states that he answered Austin's question, but did not say "sir." Id. at 6. Plaintiff alleges that Defendant Austin directed Hoopes, Wilson, and Anthony to "kick his ass" because he

---

[2]The Court does not refer to Hoopes as a Defendant because on April 24, 2012, the Court dismissed Hoopes pursuant to Fed. R. Civ. P. 4(m).

did not say "sir."  Id.   For the second time, Plaintiff claims
Hoopes, Wilson, and Anthony beat him while calling him "racially
derogatory" names, until he lost consciousness.  Id.  After the
second attack Plaintiff states that he was taken to medical for a
pre-confinement physical.  Id.  Plaintiff alleges that he had blood
flowing from "within and under" his left eye, trauma to his left
ear, and his left shoulder.  Id.

**B.  March 30, 2008 Retaliation Incident: Defendant Wilson**

On March 30, 2008, Plaintiff alleges that Defendant Wilson and
an unidentified officer went to his cell and threatened Plaintiff
with "reprisal" if he reported the March 29 incident by filing any
inmate grievances.  Id. at 6.  Plaintiff states that Wilson told
him "they will beat him worse than before," if he grieves the
issue.  Id.  Plaintiff explains, however, that before Wilson
threatened him, he had already submitted an inmate request to see
the "compound inspector" about the March 29 incident.  Id.

**C.  March 31, 2008 Punching Incident: Defendants Austin and Bostic**

On March 31, 2008, Defendant Bostic was escorting Plaintiff in
handcuffs and shackles from a dental callout.  Plaintiff saw
Lieutenant Austin in the sally port of Y-dorm and asked Bostic to
delay his escort because he feared Austin would hurt or kill him.
Id. at 7.  Nonetheless, Bostic continued to escort Plaintiff into
the Y-dorm.  Plaintiff claims that Defendant Lieutenant Austin
yelled to Bostic telling Bostic to bring Plaintiff to the "other

side of Y-dorm because he wanted to talk to Plaintiff alone." Id. Bostic complied with Lieutenant Austin's instruction and left Plaintiff alone with Austin. Id. Plaintiff claims that Defendant Austin then escorted him into a bathroom where Lieutenant Austin proceeded to threaten Plaintiff with death if he told on him or any of the other officers. Plaintiff claims Lieutenant Austin then "fabricated a report verbally [sic] to state that he heard that [Plaintiff] was eye-balling one of his nurses." Id. Thereafter, Lieutenant Austin punched him one time in his mouth and told him this is "a reminder as to how easy [it] [is] to get a hold of [him]." Id.

After this assault, Lieutenant Austin "ordered Plaintiff to return to [his] cell." Id. When he reached his cell door, Plaintiff states that Defendant Bostic was waiting at his cell door to secure the door and was "shocked" to see that he had a bloodied mouth. Id. Plaintiff states he was too scared to seek medical treatment. Id. at 8. Instead, Plaintiff contacted his family members about the incident and his family called the Warden. Id. Plaintiff avers that the harassment stopped for a while after his family contacted the Warden.

**D. June 2008 and October 2009 Continuation**

On an unspecified day in June of 2008, Hoopes and an unidentified officer "resumed" "threatening and harassing" Plaintiff, and called him "racially derogatory" names. Id. at 9.

Plaintiff contacted his family and his family again contacted the Warden to report the incident.  Id.  After Plaintiff's family contacted the Warden, Plaintiff claims Hoopes' threats stopped. Id.

On an unspecified day in October of 2009, Defendant Austin returned to Charlotte Correctional.  Id.  At some point, Defendant Austin went to Plaintiff's cell to tell him "he was back" and threatened "to get" Plaintiff.  Id.  Plaintiff called his sister to tell her about the incident and she reported the incident to the Colonel.  Id.  Thereafter, the Colonel called him to his office to discuss the incident.  Two weeks later, Plaintiff was transferred to Lake Butler Medical Reception Center, due to the injuries sustained in his left ear as a result of the 2008 beating, and then he was transferred to Martin Correctional Institution.  Id. at 9-10.  As relief, Plaintiff seeks monetary damages, waiver of all liens placed on his inmate account by the Department of Corrections, and reimbursement for the costs of litigation.  Id. at 11.

### III. Motions to Dismiss

Defendants Bostic, Anthony, and Wilson move to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6).[3]  With respect to the

---

[3]Defendants also argue that the action should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) for failure to state a claim, presumably because Defendants want to ensure Plaintiff receives a strike if the action is dismissed for failure to state

(continued...)

March 29, 2008 incidents, Defendants argue that the claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994) and point to a disciplinary report (#510-080860) in which Plaintiff was charged with assault or attempted assault on an officer on March 29, 2008. Mot. Dismiss at 7, 18-20.  With respect to the March 31 incident, Defendant Bostic moves to dismiss based on Plaintiff's failure to exhaust his administrative remedies.  Id. at 3-6, 10-16. Specifically, Bostic argues that no grievance raised an issue with a female officer failing to report Defendant Austin's March 31, 2008 assault on Plaintiff.  Id. at 6.  In the alternative Bostic argues that the action fails to state a failure to intervene claim and asserts that she is entitled to qualified immunity.  Id. at 24-27, 31.

Defendant Wilson also moves to dismiss the action and asserts that he is entitled to qualified immunity.  Wilson Mot. Dismiss at 27-29.  Defendant Wilson argues that Plaintiff failed to exhaust his administrative remedies because Wilson's name is only mentioned in one grievance.  Wilson Mot. Dismiss at 5, 10-17.  With respect to the March 29 incident, Wilson also argues that Plaintiff's claim is barred by Heck.  Id. at 7-8, 17-21.  With respect to the retaliation claim stemming from the incident on March 30, Wilson

---

[3](...continued)
a claim.  Because the action is not dismissed in its entirety under
§ 1915(e)(2)(b)(ii), the Court finds Fed. R. Civ. P. 12(b)(6) is
the proper standard.

argues that the claim fails because Plaintiff was not deterred from filing any grievances because he had reported the incident before Wilson's alleged threats.  <u>Id.</u> at 24.

## IV. Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.  <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004).  Thus, the Court must accept all factual allegations in Plaintiff's Complaint as true and take them in the light most favorable to the plaintiff.  <u>Pielage v. McConnell</u>, 516 F.3d 1282, 1284 (11th Cir. 2008).  Conclusory allegations, however, are not entitled to a presumption of truth.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1951 (2009)(discussing a 12(b)(6) dismissal); <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

The Court employs the <u>Twombly-Iqbal</u> plausibility standard when reviewing a complaint subject to a motion to dismiss.  <u>Randall v. Scott</u>, 610 F.3d 701, 708, fn. 2 (11th Cir. 2010).  A claim is plausible where the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable

expectation that discovery will reveal evidence" that supports the plaintiff's claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007); Marsh, 268 F.3d at 1036 n.16. Specifically, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citations omitted). Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. Ashcroft, 129 S. Ct. at 1949. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id.

The "[f]actual allegations must be enough to raise a right to relief above the speculative level." See Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965, 1968-69 (citations omitted) (abrogating Conley, 355 U.S. 41 in part and stating that Conley did not set forth the minimum standard governing a complaint's survival under a motion to dismiss, rather the case "described the breadth of opportunity to prove what an adequate complaint claims"). Additionally, there is no longer a heightened pleading requirement. Randall, 610 F.3d at 701. Because Plaintiff is proceeding pro se, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. Hughes v.

-9-

Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) (citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)).

## V.   Applicable Law & Findings

### A.   Section 1983

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law.  Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001).  In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation.  Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).  Here, Plaintiff alleges violations of his First and Eighth Amendment rights under the United States Constitution.  Defendants do not contest that they were acting under the color of state law.

### B.   Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, which amended The Civil Rights of Institutionalized Persons Act, provides as follows:

>      (a) Applicability of administrative remedies.
>      No action shall be brought with respect to
>      prison conditions under section 1983 of this
>      title, or any other Federal law, by a prisoner
>      confined in any jail, prison, or other
>      correctional facility ***until such
>      administrative remedies as are available are
>      exhausted***.

42 U.S.C. § 1997e(a)(emphasis added).  Although prisoners are not

required to plead exhaustion, Jones v. Bock, 549 U.S. 199, 216

(2007), "[t]here is no question that exhaustion is mandatory under

the PLRA, and that unexhausted claims cannot be brought in court."

Id. at 211; see also Bingham v. Thomas, 654 F.3d 1171, 1175 (11th

Cir. 2011).

To "properly exhaust" administrative remedies a prisoner must

complete the administrative review process, as set forth in the

applicable prison grievance process.  Jones, 549 U.S. at 218.  A

prisoner cannot satisfy the exhaustion requirement by filing an

untimely or otherwise procedurally defective administrative

grievance or appeal.  Woodford, 548 U.S. at 92-103.  However, an

administrative remedy that was not discovered, and which could not

have been discovered through reasonable effort, until it was too

late for it to be used is not an "available" remedy.  Goebert v.

Lee County, 510 F.3d 1312, 1324 (11th Cir. 2007).  A remedy is not

available if it is unknown or unknowable because such remedy is not

"capable for use for the accomplishment of a purpose."  Id. at

1323.  Inmates are not required to "craft new procedures when prison officials demonstrate . . . that they will refuse to abide by the established ones." <u>Turner v. Burnside</u>, 541 F.3d 1077, 1083 (11th Cir. 2008)(citations omitted).  Additionally, "[a]n administrative remedy is not available for purposes of the PLRA . . . if prison officials render pursuit of the remedy irrational through serious threats of substantial retaliation." <u>Cole v. Sec'y Dep't of Corr.</u>, 451 F. App'x 827, 828 (11th Cir. 2011)(citing <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084-85 (11th Cir. 2008)).

Whether an inmate has exhausted his available administrative remedies is a factual issue that is properly made by the court. <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008).  Thus, "[e]ven though a failure-to-exhaust defense is non-jurisdictional, it is like a defense for lack of jurisdiction in one important sense: Exhaustion of administrative remedies is a matter in abatement, and ordinarily does not deal with the merits."  <u>Id.</u> (footnote, internal quotations, and citations omitted).  The defense of exhaustion is properly raised in a motion to dismiss as a "matter of judicial administration." <u>Id.</u> at 1375.  Thus, the court is permitted to look beyond the pleadings to decide disputed issues of fact in connection with the exhaustion defense.  <u>Id.</u> at 1377, n.16.

The Court is not persuaded by Defendants' arguments that Plaintiff failed to exhaust his administrative remedies. Defendants Bostic and Wilson reference the affidavit of Rebecca Padgham and describe six grievances that Plaintiff filed on <u>appeal</u> with the Office of the Secretary.  Defendant Bostic argues that none of Plaintiff's appellate grievances raise an issue with a female officer failing to report, or intervene, in Defendant Austin's March 31, 2008 assault on Plaintiff.  Mot. Dismiss at 6. Defendant Wilson argues that Plaintiff did not exhaust his remedies because Wilson's name is only mentioned in a grievance regarding the alleged threat that occurred on March 30, 2009.  Wilson Mot. Dismiss at 5, 10-17.  Both Defendants argue that an affidavit Plaintiff attached to one of his grievances on appeal was improper because the affidavit raised more than one issue or complaint, contrary to the Department of Correction's rules.  Mot. Dismiss at 6; Wilson Mot. Dismiss at 6.

Defendants summarize Plaintiff's inmate grievances filed <u>on appeal</u> to the Secretary of the Department of Corrections, but fail to make any of these grievances a part of the record in this case. The grievances, or inmate request forms, attached to Plaintiff's Amended Complaint include one informal grievance filed at the institutional level on March 23, 2010.  Amended Complaint at 13. This inmate grievance, which appears to attach an affidavit from

Plaintiff, addresses the March 29 group beating, the March 30 threats of retaliation by Wilson, the March 31 punch and threats of retaliation from Austin, and the June 2008 and October 2009 resumed threats by Austin. Id. The institution approved this grievance and did not deny the grievance for listing more than issue. Thus, the Court rejects Defendants' argument that this grievance was inadequate because it addressed more than one issue because the grievance was approved and not rejected on that basis.

To the extent Wilson argues that Plaintiff failed to exhaust his remedies with respect to the March 29 group beating because his name was not listed as one of the guards involved in the group beating, Wilson's name does appear elsewhere on the form. See Amended Complaint at 13. The PLRA does not include a requirement that all defendants be named in the grievance. Exhaustion is not inadequate simply because an individual later sued was not named in the grievances. The level of detail necessary in a grievance is governed by the prison's requirements, not the PLRA. Jones, 127 S. Ct. 910, 922-23 (2007); see also Geter v. Turpin, 2006 WL 2583286 *6 (N.D. Ga. Sept. 6, 2006)(citing Brown v. Sikes, 212 F.3d 1205, 1208 n. 3 (11th Cir. 2000)). Defendant Wilson does not point to any Department rule requiring that each correctional officer be specifically named in a grievance. The general rule under the PLRA is that the grievance need only provide

administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. The Court finds the informal grievance that prison officials "approved" sufficiently apprised correctional officials about the circumstances at issue in the instant action. Further, Plaintiff's family contacted correctional officials to apprise officials about all of the incidents and Plaintiff verbally appraised the Colonel after the 2009 incidents, which apparently resulted in his transfer from Charlotte Correctional.

Alternatively, Plaintiff alleges sufficient facts in the Amended Complaint to demonstrate that his administrative remedies were not "available." According to the Amended Complaint, Plaintiff faced threats of retaliation if he filed any grievances about the incidents. Plaintiff claims he was under such fear during his incarceration at Charlotte Correctional that he contacted his family to contact prison officials. Under Turner, a prisoner must establish that: (1) the threat actually deterred him from lodging a grievance or pursuing a particular part of the administrative process; and (2) the threat is one that would so deter a reasonable inmate of ordinary firmness and fortitude. Id. at 828 (citing Turner, 541 F.3d at 1085). Here, the Amended Complaint alleges such facts. Moreover, the Court notes that Plaintiff submitted the informal grievance and appellate

grievances, which are attached to the Amended Complaint, in 2010 after Plaintiff was no longer incarcerated at Charlotte Correctional Institution.  Based on the current record, the Court denies Defendants' respective Motions based on failure to exhaust administrative remedies.

## C.  __Heck__ Bar

Defendants submit that Plaintiff's claim stemming from the March 29 group beating is barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) because Plaintiff was found guilty of a discplinary report stemming from the March 29 incident.  Defendants attach as an exhibit disciplinary report number 510-080860, written by Hoopes, which states:

> On 3/29/08 at approximately 12:50PM while assigned as an inside security officer, I was supervising inmate Garcia, Oscar DC #683590 picking up trash around the side of food service.  As inmate Garcia approached the sidewalk in front of laundry, inmate Garcia stated, "this is bull[]. You need to take me to jail cracker, I ain't your boy today."  I gave inmate Garcia a direct order to continue to picking up trash or a disciplinary report would be written. At this time inmate Garcia began walking away from me.  I ordered inmate Garcia to stop and turn around so that I could place hand restraints on him.  Inmate Garcia complied and as I attempted to place hand restraints on him, inmate Garcia turned towards me and stated, "you ain't putting handcuffs on me [expletive]."  I gave inmate Garcia an order to turn back around as I reached for my chemical agents as a precaution.  At this time inmate Garcia lunged towards me and it became necessary to use force to control inmate Garcia's actions.  Inmate Garcia was advised that he would be receiving a disciplinary report for I-19, assault or attempted assault on a correctional officer.

See Exh. B, Mot. Dismiss.

In Heck, the United States Supreme Court held:

[I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has **not** been so invalidated is **not cognizable under § 1983**. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck, 512 U.S. at 486-87 (emphasis added)(internal citation and footnote omitted). The United States Supreme Court has applied the Heck analysis to actions brought by prisoners who are challenging disciplinary proceedings in jails. See Edwards v. Balisok, 520 U.S. 641, 643-649 (1997); Roberts v. Wilson, 2007 WL 4336446 (11th Cir. 2007).

In Balisok, the plaintiff initiated a § 1983 action alleging defendants violated his due process rights during a disciplinary hearing, which resulted in the plaintiff's loss of good-time credits. Id. at 643. The Balisok Court concluded that a § 1983 action was not cognizable, even though the plaintiff was challenging the procedure and not the result, because a finding in favor of the plaintiff would "necessarily imply the invalidity of

-17-

the punishment imposed." Id. at 648.  The Court held that a prisoner could not pursue such an action unless the prisoner had successfully invalidated the disciplinary report.  Id. at 646-68; see also Wilkinson v. Dotson, 544 U.S. 74 (2005)(finding a state prisoner's § 1983 action is barred --absent prior invalidation-- no matter the relief sought--damages or equitable relief-- no matter the target of the prisoner's suit--state action leading to conviction or internal prison proceedings-- if success in that action would necessarily invalidate prisoner's confinement).

However, Heck does not apply to all suits challenging prisoner disciplinary proceedings.  See Muhammad v. Close, 540 U.S. 749, 754-55 (2004); See also Beecher v. Jones, Case No. 3:08-cv-416, 2010 WL 5058555 (N.D. Fla. Oct. 29, 2010)(finding the plaintiff did not "steer his case" into Heck territory because according to the complaint "[p]laintiff could have committed all of the acts set forth in the DR and hearing team decision, yet the manner in which the chemical agent was applied, the duration of its application, etc., could still constitute the use of excessive force.").  In Muhammad, the Court declined to extend Heck to a prisoner's § 1983 action claiming a constitutional violation based on his pre-hearing confinement.  The Court held that this plaintiff's action did not challenge the conviction, the disciplinary action, nor did he seek expungement of the misconduct finding, so it was not "construed as seeking a judgment at odds with his conviction." Id. at 754-55.

The Court's determination whether a claim is barred by <u>Heck</u> turns on the Plaintiff's allegations.  The Amended Complaint does not contain many facts surrounding the incident leading up to the March 29 group beating.  In fact, the Amended Complaint neither mentions any disciplinary report, nor does it allege the report is false.  Instead, Plaintiff alleges Hoopes, Wilson, and Anthony beat Plaintiff to the point of unconscious, and then when he returned to consciousness, he claims he was beat again by Austin, Hoopes, Anthony, and Wilson until he lost consciousness.  While the disciplinary report acknowledges that "force" was used to control Plaintiff's actions, Plaintiff only challenges the type and amount of force used on him.  A finding that excessive force was used on Plaintiff on March 29 when Defendants beat Plaintiff, twice, to the point of unconsciousness, is not at odds with the disciplinary finding that Plaintiff used profanity and lunged at Officer Hoopes. Additionally, there is no indication that the disciplinary report impacted the length of Plaintiff's sentence.  Thus, the Amended Complaint is not <u>Heck</u> barred and the Defendants' respective Motions based on <u>Heck</u> are denied.

## D.  **Failure to Intervene and Failure to Protect**

Defendant Bostic argues that she cannot be held liable for failing to intervene with respect to the March 31 event because, *inter alia*, she was not actually present when Defendant Austin allegedly punched Plaintiff.  Mot. Dismiss at 26.  If the Court

finds a constitutional violation based on the excessive use of force, "'an officer who [was] present at the scene and who fail[ed] to take reasonable steps to protect the victim of another officer's use of force, can be held liable for the nonfeasance.'" <u>Velazquez v. City of Hialeah</u>, 484 F.3d 1340, 1341 (11th Cir. 2007)(citing <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1302 (11th Cir. 2002))(other citations omitted). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." <u>Priester v. City of Riviera Beach, Fla.</u>, 208 F.3d 919, 924 (11th Cir. 2000)(citing <u>Ensley v. Soper</u>, 142 F.3d 1402, 1407 (11th Cir. 1998)).

Indeed, the factual averments in the Amended Complaint allege that Bostic was escorting Plaintiff back to his cell, but Defendant Austin told Bostic to bring Plaintiff to him. Plaintiff then alleges that Defendant Austin took him into the bathroom where the alleged incident took place. According to the Complaint, Plaintiff did not see Bostic again until he returned to his cell. Based on the foregoing, the Court finds the Amended Complaint fails to state a claim as to Defendant Bostic because she was not present and therefore not in the position to intervene.

However, the Amended Complaint states a failure to protect claim. The Supreme Court made clear that "prison officials have a duty . . . to protect prisoners from violence . . . ." <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994); <u>see</u> <u>also</u> <u>Doe v. Georgia Dep't of</u>

Corr., 245 F. App'x 899 (11th Cir. 2007).   A violation of the
Eighth Amendment occurs when a prison official acts with deliberate
indifference to a substantial risk of harm to an inmate.   Farmer,
511 U.S. at 828.   "Deliberate indifference is not the same thing as
negligence or carelessness."   Maldonado v. Snead, 168 F. App'x 373
(11th Cir. 2006)(citing Ray v. Foltz, 370 F.3d 1079, 1083 (11th
Cir. 2004)).   "Merely negligent failure to protect" an inmate from
an attack does not give rise to a § 1983 claim.   Carter v.
Galloway, 352 F.3d 1346, 1350 (11th Cir. 2003).

A plaintiff must demonstrate that the defendant was aware of
specific facts from which an inference could be drawn that a
substantial risk of serious harm exists and that the prison
official drew that inference.   Purcell v. Toombs County, Ga., 400
F.3d 1313, 1319-20; Carter, 352 F.3d at 1349.   In other words, to
show that an official had subjective knowledge, the court is to
inquire whether the defendant was aware of a "particularized threat
or fear felt by [the plaintiff]."   Id. at 1350.   "An official's
failure to alleviate a significant risk that he should have
perceived but did not, while no cause for commendation, cannot . .
. be condemned as the infliction of punishment" and does not give
rise to a constitutional violation.   Farmer, 511 U.S. at 838.
Whether an official had requisite knowledge is a question of fact
that may be demonstrated by circumstantial evidence.   Id. at 842.

Here, the Amended Complaint alleges that Plaintiff asked Bostic to delay bringing him through Y-dorm and told Bostic that he was afraid Lieutenant Austin would hurt or kill him. Nonetheless, Bostic complied with Lieutenant Austin's directive that Bostic bring Plaintiff to him and leave Plaintiff alone with Lieutenant Austin. This resulted in the March 31 punching incident and additional threats of retaliation. Thus, the Court will allow the parties to engage in discovery to determine inter alia: what transpired during Bostic's escort of Plaintiff, whether Lieutenant Austin had a reputation for using excessive force and threats on inmates of which Bostic was aware, whether Bostic knew of any prior excessive use of force incidents between Lieutenant Austin and other inmates, or between Plaintiff and Lieutenant Austin. Accordingly, the Motion is denied to the extent Bostic seeks dismissal.

**E.  Retaliation**

The Amended Complaint alleges that on March 30, Defendant Wilson threatened Plaintiff with retaliation if he filed any inmate grievances regarding the March 29 incident. Defendant Wilson argues that the Amended Complaint fails to state a retaliation claim because Plaintiff was not actually deterred from filing any grievances because he filed a grievance before Wilson came to his cell and threatened him. Wilson Mot. Dismiss at 24-25 (emphasis added).

Prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1968)(per curiam).  To prevail on a First Amendment retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech.  O'Bryant v. Finch, 637 F.2d 1207, 1212 (11th Cir. 2011)(internal quotations omitted); Moton v. Cowart, 631 F.3d 1337, 1341-42 (11th Cir. 2011).  "To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights."  Moton, 631 F.3d at 1341 (quoting Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008)).

Here, Defendant Wilson's argument that the Amended Complaint fails to state a retaliation claim because Plaintiff had already filed a grievance before Wilson allegedly threatened Plaintiff with retaliation, fails to address whether the alleged retaliation deterred Plaintiff from filing any grievances after the retaliation occurred.  Plaintiff alleges he was afraid after Wilson threatened him and had his family contact prison officials.  Additionally, as previously noted, the inmate grievances attached to Plaintiff's Amended Complaint are dated in the year 2010, after Plaintiff left

-23-

Charlotte Correctional Institution.  Moreover, even if Plaintiff had filed an inmate grievance immediately after Wilson threatened him with retaliation, the Eleventh Circuit Court of Appeals has ruled "that a plaintiff need not show that his own exercise of First Amendment rights have been chilled, but instead a plaintiff can establish injury if he can show that the retaliatory acts are sufficiently adverse that a jury could find that the actions would chill a person of ordinary firmness from exercising his First Amendment rights."  Pittman v. Tucker, 213 F. App'x 867, 870 (citing Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005), cert. denied, 549 U.S. 809 (2006)).  Accordingly, Defendant Wilson's Motion on the retaliation claim is denied.

## F.  Qualified Immunity

In the alternative, Defendants Wilson and Bostic argue that they are entitled to qualified immunity.  The Amended Complaint alleges that Wilson was involved in the excessive of force on Plaintiff on March 29, 2008.  The Amended Complaint also alleges that on March 30, 2008, Wilson threatened Plaintiff with retaliation if he grieved the March 29 incident.  The Amended Complaint alleges that Bostic failed to protect Plaintiff from the March 31 incident involving Lieutenant Austin.

Based on the current record before the Court, the Court denies Defendants' respective Motions based on qualified immunity.  A qualified immunity defense is not available for excessive use of

force claims.   In the Eleventh Circuit, "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force maliciously and sadistically to cause harm is clearly established to be a violation of the Constitution by the Supreme Court decisions in <u>Hudson</u> and <u>Whitley</u>." <u>Johnson v. Breeden</u>, 280 F.3d 1308 (11th Cir. 2002); <u>Skrtich v. Thornton</u>, 280 F.3d 1295 (11th Cir. 2002).   Additionally, it is well established law that prison officials may not retaliate against inmates for filing inmate grievances regarding the conditions of their confinement and that prison officials have a duty to protect prisoners from harm. <u>Farmer</u>, 511 U.S. 825; <u>Wright v. Newsome</u>, 795 F.2d 964, 968 (11th Cir. 1968)(per curiam).   The only question at this stage is whether Plaintiff has alleged sufficient facts to survive a motion to dismiss.   <u>Skrtich</u>, 2002 WL at *2.   The Court concludes that the facts alleged, as summarized above, survive a motion to dismiss as to Defendants Bostic and Wilson in their individual capacities.

**G.  Reconsideration**

On May 21, 2012, Plaintiff filed a Motion for Reconsideration of the Court's April 24, 2012 Order dismissing Defendant Hoopes pursuant to Fed. R. Civ. P. 4(m).   <u>See</u> <u>generally</u> Motion.   The Court entered judgment as to Hoopes that same day.   <u>See</u>  Doc. #63.

Federal Rule of Civil Procedure 59(e) affords the Court substantial discretion to reconsider an order which it has entered.

See <u>Mincey v. Head</u>, 206 F.3d 1106, 1137 (11th Cir. 2000).  "The only grounds for granting a rule 59 motion are newly discovered evidence or manifest error of law or fact."  <u>Arthur v. King</u>, 500 F.3d 1335, 1343 (11th Cir. 2007)(citations omitted).  Rule 59 also provides for relief for an intervening change in law.  Federal Civil Rules Handbook, Rule 59(e)(2012).  A Rule 59 motion is not intended as a vehicle to re-litigate old matters, raise new arguments or present evidence that could have been raised prior to the entry of judgment.  <u>Michael Linet, Inc. v. Village of Wellington, Fla.</u>, 408 F.3d 757, 763 (11th Cir. 2005).

Federal Rule of Civil Procedure 60(b) permits a party to seek relief from a final judgment under specific circumstances such as: "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  Rule 60 also provides for a catchall provision that permits the Court to grant relief from a final judgment "for any other reasons that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Relief under this provision is "exceedingly rare" and "does not offer an unsuccessful litigant an opportunity 'to take a mulligan.'"  Federal Rules Civil Handbook, Rule 60, Reason 6 (quoting <u>Kramer v. Gates</u>, 481 F.3d 788, 792 (D.C. Cir. 2007)).  "Even then, whether to grant the requested relief is a matter for the district court's sound discretion."  <u>Cano v. Baker</u>, 435 F.3d 1337, 1342 (11th Cir. 2006)(quotation and alteration marks omitted).

In the April 24 Order of dismissal, the Court pointed out that the U.S. Marshal was directed to attempt service of process on all defendants on July 20, 2011.  <u>See</u> Order at 1.  On December 16, 2011, the Court entered an order noting that service of process remained unexecuted on Defendant Hoopes and that Plaintiff had been notified on or about September 14, 2011 that service of process was not executed on Hoopes.  <u>Id.</u> (citing Doc. #50 and noting that service of process was unexecuted because Hoopes no longer worked for the Florida Department of Corrections).  The Court further noted that the U.S. Marshal took all reasonable steps to effect service on Defendant Hoopes, but Plaintiff failed take any additional steps to ensure service of process was executed on Hoopes.  <u>Id.</u> at 2; <u>see also</u> docket.  In the abundance of caution, the Court *sua sponte* gave Plaintiff a fourteen-day extension of time to re-file completed service of process forms for Defendant Hoopes.  The Court warned Plaintiff that failure to do so would result in the dismissal of Hoopes pursuant to Fed. R. Civ. P. 4(m).  <u>Id.</u>

A review of the docket reveals that Plaintiff did not re-file new service forms for Hoopes during the allotted time, nor did he seek any additional extensions of time.  <u>See</u> docket.  In the Motion for Reconsideration, Plaintiff acknowledges that he was aware of the Court's December 16, 2011 Order and made three attempts to find Hoopes' new address by writing to the Department of Corrections

Legal Affairs to no avail.  Motion at 2.  Plaintiff acknowledges that these were his <u>only</u> attempts to find Hoopes address.  <u>Id.</u> at 3 (emphasis added).  Plaintiff states that if the Court had appointed him counsel, then counsel would have effected service on Defendant Hoopes.  <u>Id.</u> at 1.

The Court finds the reasons raised in the instant Motion do not warrant relief under either Fed. R. Civ. P. 59, or Fed. R. Civ. P. 60.  Instead of filing a motion, or otherwise notifying the Court, during the extra time period allotted to Plaintiff, Plaintiff remained silent.  Significantly, the record demonstrates that Plaintiff remains in contact with several family members who could have assisted Plaintiff in finding an address for Hoopes.  Plaintiff's family members contacted prison officials on several other occasions to advise them about the incidents at issue in this action.  Thus, Plaintiff did not require the appointment of counsel to assist him in finding Hoopes' address.  At a minimum, Plaintiff should have filed an appropriate motion with the Court after he received the Court's December 16, 2011 Order.

ACCORDINGLY, it is hereby

**ORDERED**:

1.  The Motion to Dismiss (Doc. #49) filed on behalf of Defendants Bostic, Anthony, and Austin is **GRANTED** as to Bostic only with respect to the failure to intervene claim and is otherwise **DENIED** in its entirety.

2.    Defendant Wilson's Motion to Dismiss (Doc. #58) is **DENIED.**

3.    Defendants shall file their Answer and Affirmative Defenses within **twenty-one (21) days** from the date on this Order.

4.    Plaintiff's "Motion to Recall Order Reinstate Defendant Hoopes in Original Complaint to this Court" (Doc. #66), construed to be a Motion for Reconsideration, is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, on this __10th__ day of September, 2012.

_John E. Steele_
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record