UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

OSCAR GARCIA,

        Plaintiff,

vs.                          Case No.  2:11-cv-56-FtM-29DNF

LIEUTENANT   AUSTIN;   CORRECTIONAL
OFFICER WILSON; CORRECTIONAL OFFICER
ANTHONY;   CORRECTIONAL   OFFICER
BOSTIC,

        Defendants.
_____

**OPINION AND ORDER**

**I.  Status**

    This  matter  comes  before  the  Court  upon  review  of  the
respective  motions  for  summary  judgment  filed  on  behalf  of
Defendants  Anthony,  Austin,  and  Bostic  (Doc.  #87,  hereinafter
"Motion")  and  Wilson  (Doc.  #88,  "Wilson  Motion")  filed  on  April  16,
2013.   Defendants  refer  to  the  following  exhibits  (Doc.  #87-1,
Defs' Exhs. A-O) in support of their motions: Use of Force Report
log number 2008-510-0065 (Exh. A); Disciplinary Report Conviction
log  number  510-080860  (Exh.  B);  Declaration  of  Michael  Anthony
(Exh. C); Declaration of Rollin Austin (Exh. D); Inspector General
Report numbers 08-5-1381 and 2008-510-0065 (Exh. E); Declaration of
Dean  Glisson  (Exh.  F);  Incident  report  of  Michael  Anthony  (Exh.  G);
Daily  Security  Roster  for  March  29,  2008,  second  shift
(redacted)(Exh.  H);  Incident  report  of  Rollin  Austin  (Exh.  I);
Florida  Administrative  Code  33-602.201  (Exh.  J);  Plaintiff's  Post

Use of Force Medical Examination Report dated March 29, 2008 (Exh. K); Declaration of Doctor Robert Hemphill (Exh. L); Declaration of Denetrice Bostic (Exh. M); copies of Plaintiff's relevant medical records (Exh. N); and, Excerpts of Plaintiff's deposition (Exh. O).[1]

Plaintiff was warned about the provisions of Fed. R. Civ. P. 56 and given numerous enlargements of time to file a response to Defendants' motions for summary judgment. See docket.  Plaintiff filed his Response (Doc. #112, Response) on October 7, 2013.[2] See docket.  Plaintiff's Response includes within it his his sworn declaration. Response at 1-2.  Contrary to the Court's admonitions, Plaintiff did not attach any other exhibits in support of his Response, nor did he move for permission to supplement his response

---

[1] Defendants' exhibits were actually submitted with the Motion filed on behalf of Defendants Anthony, Bostic, and Austin.  See Motion.  Defendant Wilson incorporates by reference these exhibits.  See Wilson Motion at 3, n.2.

[2] Plaintiff's initial response to Defendants' motion for summary judgment was date stamped by prison officials on October 7, 2013 (Doc. #112), filed by the Clerk on October 15, 2013, and was fifteen pages in length.  The response did not include any supporting exhibits.  Plaintiff later re-filed his response (Doc. #118-1), accompanied by a notice (Doc. #118), with the same October 7, 2013 date stamp (Doc. #118-1), filed by the Clerk on October 28, 2013, but was sixteen pages in length because it included an inmate grievance concerning when Plaintiff's previous response was date stamped due to a lock down at the institution.  This sole exhibit did not support Plaintiff's response opposing Defendants' motions for summary judgment.  The Court deems Plaintiff's first response (Doc. #112) the operative response and directs the Clerk to strike Plaintiff's subsequent response (Doc. #118).

with any declarations   from inmate witnesses.   <u>See</u> docket.[3]   On

_____

[3]There is a lengthy procedural history that occurred prior to Plaintiff filing his October 7, 2013 response to Defendants' motions for summary judgment.   <u>See</u> Doc. #111; Doc. #124. Defendants filed their respective motions for summary judgment on April 16, 2013.   Plaintiff's response was due within twenty-one days.   <u>See</u> Doc. #32 at 3.   Plaintiff filed a motion for enlargement of time to file a response on May 22, 2013.   On June 10, 2013, the Court granted Plaintiff's enlargement of time and allowed Plaintiff an additional sixty days to file a response to Defendants' motions. <u>See</u> Doc. #95.   Plaintiff filed another motion for an enlargement of time on August 5, 2013.   The Court again granted Plaintiff's motion, setting the deadline for Plaintiff's response as October 5, 2013.   <u>See</u> Doc. #103; <u>see also</u> Doc. #107 (explaining October 5, 2013 falls on a Saturday, so the deadline for Plaintiff's response is October 7, 2013).   The Court warned Plaintiff that this was his "**final** enlargement of time." <u>Id.</u> at 3 (emphasis in original).

On September 16, 2013, despite the discovery deadline expiring in January of 2013, Plaintiff filed a motion for court assistance to locate three inmate witnesses.   <u>See</u> Doc. #107.   Plaintiff claimed that he was not provided the opportunity to contact potential inmate witnesses.   The Department did not object to Plaintiff following the rules implemented by the Department for inmate litigants wishing to contact other inmate witnesses. <u>See</u> Doc. #105.   Despite the discovery deadline's expiration some nine months before, the Court granted Plaintiff's motion for assistance to ensure he had an adequate opportunity to obtain declarations from other inmates he identified as witnesses. <u>See id.</u> Despite the Department's established protocol for inmate litigants to contact other inmates, <u>see</u> Doc. #105, to expedite the case the Court directed the Department of Corrections to assist Plaintiff in locating his three identified inmate witnesses.   <u>See</u> Doc. #107. The Department eventually complied.   <u>See</u> Doc. #124 (order to show cause), Doc. #126 (response to show cause order stating that inmate Bryant Mooreland is no longer an inmate with the Department of Corrections, that inmate Johnny Rodriquez did complete a declaration and that it was mailed to Plaintiff, and that inmate Jackson did not wish to complete a declaration). As an aside, Plaintiff apparently did not understand that the Court reopened discovery only for the limited purposes of ensuring he was able to contact the three identified inmate witnesses and tried to gather additional discovery from Defendants.   <u>See</u> Doc. #134.

Due to a short delay in obtaining the inmate declarations, the
(continued...)

December 20, 2013, Defendants filed briefs in Reply (Doc. #137, #138) with the Court's permission.  This matter is ripe for review.

---

<sup>3</sup>(...continued)
Court again enlarged Plaintiff's deadline to file a motion to supplement his response and specifically told Plaintiff he had to file a motion to supplement his response to include any inmate witness declarations on or before December 6, 2013.  See Doc. #124. Despite Plaintiff receiving an inmate declaration from Johnny Rodriquez on or about November 7, 2013, Plaintiff did not move to supplement his response to include this declaration by the Court's December 6, 2013 deadline.  See docket. Instead, Plaintiff filed a "motion explaining why it appears Plaintiff is delaying legal litigation with the Defendants" (Doc. #134), bearing a prison date stamp of December 5, 2013, and filed by the Clerk on December 9, 2013. Defendants filed responses opposing the motion (Docs. #135, #136) on December 16, 2013.

Plaintiff filed the instant motion approximately two months after he filed his response to Defendants' motions for summary judgment and submits that he had difficulties accessing legal materials and the inmate law clerk who was assisting him with typing went to confinement, inter alia.  It appears Plaintiff believes he needed access to the law library and/or a law clerk who could help him with typing before he moved to supplement his response with the inmate declarations discussed at length herein.

The Court is cognizant of delays prisoner litigants face when litigating a case and has granted Plaintiff generous enlargements of time, even reopening a discovery deadline that was 9 months expired to allow Plaintiff to gather declarations from inmates he identified as witnesses, albeit one inmate was no longer an inmate and only one inmate wished to provide Plaintiff with a declaration. Neither access to the law library nor a computer was necessary to timely file a motion to supplement his response to include the inmate declaration from Johnny Rodriquez, which he received on or about November 7, 2013, by the December 6, 2013 deadline. Plaintiff was able to file the instant typed motion instead of filing a motion to supplement and/or file the inmate declaration. Thus, Plaintiff's motion to the extent it can be construed as a motion for an enlargement of time to supplement the response to include the declaration of inmate Rodriquez is denied.  To the extent the motion can be construed as seeking appointment of counsel, the Court stands by its decisions denying appointment of counsel.  See Docs. #28, #82, #84, #86, #105, #117, #124, #126.

## II.  Background

Oscar Garcia, an inmate in the custody of the Secretary of the Florida Department of Corrections, initiated this action *pro se* by filing a Civil Rights Complaint (Doc. #1) pursuant to 42 U.S.C § 1983 in the United States District Court for the Southern District of Florida on August 17, 2010.  On February 7, 2011, the Southern District transferred the action to this Court because the cause of action arose while Plaintiff was incarcerated at Charlotte Correctional Institution.  Plaintiff is proceeding on his Amended Complaint (Doc. #6, Amended Complaint), which includes as attachments various inmate grievances he filed during the year 2010 and responses thereto.

Service of process was never executed on Defendant Hoopes, a correctional officer at Charlotte Correctional Institution. See docket.  On April 24, 2012, after sufficient notice to Plaintiff, the Court entered an Order dismissing Defendant Hoopes pursuant to Fed. R. Civ. P. 4(m).  See Doc. #62.  The remaining Defendants filed motions to dismiss.  See Docs. #49, #58.  On September 10, 2012, the Court entered an order (Doc. #70, hereinafter "Order") denying the motions to dismiss filed on behalf of Defendants Bostic, Anthony, Austin and Wilson, except that defendants' motion was granted as to the failure to intervene claim against Defendant Bostic.  See Order.

Plaintiff is proceeding in this action against the following Defendants from Charlotte Correctional Institution in their individual[4] capacities: Rollins Austin, a Lieutenant at the time the cause of action arose; Michael Anthony, an escort officer; Denetrice Bostic, a medical escort officer; and, Wilson, a housing officer.  See generally Defs' Exhs A-O.  Plaintiff alleges he was subjected to cruel and unusual punishment in violation of the Eighth Amendment and retaliation in violation of the First Amendment.  Plaintiff's claims stem from an alleged excessive use of force that occurred after lunch on March 29, 2008 involving Defendants Wilson, Anthony, and Austin, and again on March 31, 2008 involving only Defendant Austin and tangentially involving Defendant Bostic, who allegedly failed to protect Plaintiff.  See Amended Complaint; see also Order.  The incidents of retaliation allegedly occurred on March 30, 2008, when Defendant Wilson threatened Plaintiff if he "told" on the officers about the March 29 use of force.  Id.  As relief, Plaintiff seeks monetary damages, waiver of all liens placed on his inmate account by the Department of Corrections, and reimbursement for the costs of litigation.

---

[4]Defendants submit that Plaintiff does not specify whether he sues defendants in either their individual or official capacities, or both.  See Motion at 2; Wilson Motion at 1-2.  The Court's Order (Doc. #70) denying defendants' motions to dismiss stated that the record showed that Plaintiff intended to sue defendants in only their individual capacities.  See Order at 2 (citing Amended Complaint and Response (Doc. #69 at 9)(Plaintiff clarifying that all defendants are named in their individual capacities only).

### III.  Standard of Review

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted). See also Fed. R. Civ. P. 56(c)(2). "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." Moton, 631 F.3d at 1341 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc)(emphasis added), not to make all *possible* inferences in the non-moving party's favor.

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." Beard v. Banks, 548 U.S. 521, 529 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. <u>Beard</u>, 548 U.S. at 529 (citations omitted); <u>Shotz v. City of Plantation, Fl.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" <u>Cuesta v. School Bd. of Miami-Dade County</u>, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. <u>Leigh v. Warner Bros., Inc.</u>, 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. <u>Arrington v. Cobb County</u>, 139 F.3d 865, 872 (11th Cir. 1998); <u>U.S. Steel, LLC v. Tieco, Inc.</u>, 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. <u>Marsh</u>, 268

F.3d at 1059; <u>Swint v. City of Wadley</u>, 51 F.3d 988 (11th Cir. 1995); <u>Tittle v. Jefferson County Comm'n</u>, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994). A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a § 1983 action. <u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 658, 690-692 (1978); <u>Quinn v. Monroe County</u>, 330 F.3d 1320, 1325 (11th Cir. 2003); <u>Farrow v. West</u>, 320 F.3d 1235 (11th Cir. 2003).

## IV. Disputed and Undisputed Facts

### A. March 29, 2008 Incident: Defendants Anthony, Wilson, and Austin

The record sets forth the following undisputed and disputed facts, which are construed in the light most favorable to the Plaintiff. On March 9, 2008, at around 12:50 p.m. Correctional Officer Hoopes ordered the last inmates to leave food services, including Plaintiff, to clean up the trash outside of food services. Defs' Exhs. C-D. Inmates do not like to be told to clean the area. <u>Id.</u> Plaintiff became angry and uncooperative. Defs' Exhs. A-B. Hoopes ordered Plaintiff to continue to clean, but Plaintiff refused. Hoopes tried to put restraints on Plaintiff, but he refused and lunged towards Hoopes. Plaintiff disputes these facts in his declaration and claims he complied with all of Hoopes' directives. Response at 3. Plaintiff received a disciplinary report log number 510-080860 charging him with

attempted assault on a correctional officer.[7]   Exh. B.   The
disciplinary committee found Plaintiff guilty of this disciplinary
report and imposed a 128-day loss of gain time and 60-days of
disciplinary confinement.   Id. at 5.   The disciplinary conviction
remains valid and has not invalidated, overturned, or otherwise
expunged.   Exh. B.

It is undisputed that Hoopes took Plaintiff down to the floor,
face first and restrained him there until other correctional

---

[7]Disciplinary report log number 510-080860 stated:

> On 3/29/08 at approximately 12:50PM while
> assigned as an inside security officer, I was
> supervising inmate Garcia, Oscar DC #683590
> picking up trash around the side of food
> service.   As inmate Garcia approached the
> sidewalk in front of laundry, inmate Garcia
> stated, "this is bullshit.   You need to take
> me to jail cracker, I ain't your boy today."
> I gave inmate Garcia a direct order to
> continue to pick up trash or a disciplinary
> report would be written. At this time inmate
> Garcia began walking away from me.   I ordered
> inmate Garcia to stop and turn around so that
> I could place hand restraints on him.   Inmate
> Garcia complied and as I attempted to place
> hand restraints on him, inmate Garcia turned
> towards me and stated, "you ain't putting
> handcuffs on me bitch."   I gave inmate Garcia
> an order to turn back around as I reached for
> my chemical agents as a precaution.   At this
> time inmate Garcia lunged towards me and it
> became necessary to use force to control
> inmate Garcia's actions.   Inmate Garcia was
> advised that he would be receiving a
> disciplinary report for I-19, assault or
> attempted assault on a correctional officer.

Defs' Exh. B at 4.

officers responded to Hoopes' body alarm that was activated.[8]
Exhs. A, D, E, F, <u>see</u> Response at 3.  Defendants submit that the
use of force was spontaneous pursuant to Florida Admin. Code 33-
602.210 due to Plaintiff lunging at Hoopes.  Exhs. A, D, E, F.  On
the other hand, Plaintiff claims he was taken down by Hoopes for no
reason at all.  Response at 3.  It is undisputed that neither
Austin nor Anthony was present to see Hoopes' initial use of force
on Plaintiff.  Exhs. C, D, G, I; Response at 3.

The events that transpired after Hoopes' took Plaintiff to the
ground are somewhat convoluted due to Plaintiff's factual
discrepancies between his declaration and his Amended Complaint.

---

[8]The record on summary judgment reveals that Plaintiff
provided a different version of the events to the Inspector
General's Office investigating the March 29 use of force by
Correctional Officer Hoopes.  Exh. E.  Plaintiff' statement was as
follows:

> On 3/29/08 he was picking up trash as ordered to do, when
> officer Hoopes just picked him up and slammed him to the
> ground for no reason.  Office Anthony jumped on him and
> held him to the ground while officer Hoopes kicked and
> kneed the inmate.  The inmate stated he was dazed and
> might have been out for a little bit, when he came too
> someone grab his hair and slammed his head into the
> concrete, which knocked out one tooth and chopped
> another.  Lieutenant Austin showed up and said "You know
> why you are getting this beating?  It's because of me."
> <u>Id.</u>

Notably, Plaintiff's statement to the Inspector General's Office
involves different participants, a different description of the use
of force, and the injuries Plaintiff claimed he sustained are
different.  This Court does not make credibility determinations,
but does note these differences in deciding what reasonable
inferences a jury could make based on the weight of evidence.

Defendants submit that Defendant Anthony, who was assigned as a confinement escort officer, and Correctional Officer Geremonte, who is not named as a defendant in this action, responded to correctional officer Hoopes' body alarm. Exh. C; see Amended Complaint. When Defendant Anthony and Correctional Correctional Officer Geremonte arrived, Hoopes was holding Plaintiff in a custodial hold on the ground, face first. Exhs. C, D. Anthony did not see any force applied to Plaintiff by Hoopes other than Hoopes holding him on the ground.[9] Exhs. C, D. Plaintiff claims in his declaration that he was unconscious at this point and when he awoke, he saw Defendants Wilson and Anthony present. Response at 3.

In the next two paragraphs of Plaintiff's declaration, he claims he awoke from unconsciousness and Hoopes stood him up and punched in his mouth with a closed fist. Response at 3. This is essentially a third use of force not alleged in the Amended Complaint. See Amended Complaint at 5. Then Plaintiff claims, albeit contradictory to his own statement that he awoke and Wilson and Anthony were present, that Anthony and Wilson "ran from the

---

[9]Because Hoopes was dismissed pursuant to Fed. R. Civ. P. 4(m), the Court will not go into detail regarding Hoopes' spontaneous use of force against Plaintiff. However, the Court notes that the Inspector General found Hoopes complied with Department rules and procedures and that the use of force was not excessive. Plaintiff has provided the Court no evidence to contradict this record evidence, other than his own statements contained in his declaration. Exh. E.

kitchen and they started to forcefully and violently kick and punch the Plaintiff . . . until he was knocked completely unconscious" for the second time.  Response at 4.

Defendant Wilson submits that he was not present at any time while Defendants Austin and Anthony were in Plaintiff's presence. See Wilson Mot. at 4, 13; see also Exhs. C, D.  Defendant Wilson was assigned as a Housing Officer in F-Dorm, which is the confinement unit.  Exhs. C, D, H.  Pursuant to Department of Corrections' policies, confinement officers must remain in the confinement dorms during their shift.  Exhs. C, D.  Contrary to Plaintiff's declaration, Defendants' exhibits show that when Defendant Anthony and Correctional Officer Geremonte arrived at the scene, they simply took over the custodial hold of Plaintiff on the ground from Hoopes until the Second Shift Lieutenant arrived. Defendant Anthony did not use any force on Plaintiff other than holding him on the ground.  Exhs. C, D.

Defendant Austin, the Second Shift Lieutenant, arrived at the scene and Hoopes told him what happened.  Exh. D.  Plaintiff claims he awoke from losing consciousness for the second time at this point and saw Defendant Austin.  Response at 4.  Defendants submit that during the entire time Defendants Austin and Anthony were present, Plaintiff was conscious and never lost consciousness. Exhs. C, D, K, L.  Defendant Austin submits that he neither used any force on Plaintiff, nor did he direct other correctional

-13-

officers to use force on him.  Exh. D.  Plaintiff does not dispute
that Defendant Austin did not use force on him, but submits that
Austin ordered Defendants Wilson and Anthony to punch and kick
Plaintiff.  Response at 4.

Pursuant to Department policy, Defendant Austin ordered
another correctional officer, Jean Pierre, to retrieve a video
camera to record Plaintiff's escort to medical and subsequent
placement in a cell.  Defendant Anthony and Correctional Officer
Geremonte continued to hold Plaintiff down on the ground while the
video camera was retrieved.  Exhs. C, D.  Plaintiff does not
dispute that Defendant Austin directed retrieval of a camera.
Defendants submit that no one made racially derogatory statements
toward Plaintiff.  Exhs. C, D.  Plaintiff claims he was called
several racially-motivated derogatory names.  Response at 4.

When Correctional Officer Pierre arrived with the video
camera, Defendant Austin gave the lead statement about the
spontaneous use of force and asked Plaintiff for his name and DC
number so he could identify him on the video.  Exh. C, D.
Plaintiff continued to give Austin the wrong DC number.  Exhs. C,
D.  Plaintiff does not dispute that he gave the wrong DC number.
See Response at 1-5.

It is undisputed that Defendant Austin ordered Defendant
Anthony and Correctional Officer Geremonte to escort Plaintiff to
medical.  Exhs. C, D.  Plaintiff was helped to his feet because he

was in leg shackles and handcuffed from behind.  Exhs C, D.  Nurse Sharp examined Plaintiff at medical.  Exhs. A, C, D, K.  The injuries Plaintiff sustained are disputed.  Defendants' evidence including Plaintiff's medical records reveals that Plaintiff had a small laceration under his left eye, a scrape on his left forehead, a scrape on his upper lip, and his front tooth was broken.  Exhs. K, L.  Nurse Sharp treated Plaintiff's cut under his eye and swabbed his lip.  Exhs. D, K.  Nurse Sharp asked Plaintiff if he had any other injuries, and he said he did not.  Exh. D. Defendants submit that Plaintiff was neither holding or protecting his arm, and his arm was not hanging from the socket.  Exhs. C, D, K, L.  Plaintiff did not complain about his shoulder, ear, or vision during the examination.  Exhs. D, K, L.  Nurse Sharp referred Plaintiff for a dental visit.  Exh. K.  Plaintiff submits in his declaration that he had "physical injuries" and trauma to his "left ear and left shoulder."  Plaintiff does not point to any medical records to document these injuries.  <u>See</u> Response at 1-5.[10]

---

[10]In fact, Defendants point to medical record entries dated April 4, 2008 and April 22, 2008, during which Plaintiff complained once about his shoulder and once about his left ear, but never complained about hearing loss.  Motion at 10 (citing Exhs. K, L, N).  The medical record reveals that Plaintiff's ear was examined and it was noted that his ear canals looked normal.  Plaintiff complained in his Amended Complaint of a left eye injury, but did not mention this injury in his declaration.  Response at 1-5. Nevertheless, the medical records indicated that Plaintiff only mentioned a "dry eye" during a medical visit, which is an ongoing medical concern he has experienced prior to the use of force. Motion at 10 (citing Exhs. L, N).

**B.  March 30, 2008 Retaliation Incident: Defendant Wilson**

Defendant Wilson denies making any threats to Plaintiff on March 30 about reporting the March 29 incident because Wilson was not even present during the March 29 incident.  Wilson Mot. at 4; Exhs. C, D.  Defendant Austin did not order or request that Defendant Wilson threaten Plaintiff.  Motion at 9;  Exhs. C, D. Defendant Wilson did not know that Plaintiff had already filed an inmate grievance concerning the March 29 incident earlier that day. Wilson Mot. at 17; Exh. O at 191.  To the contrary, Plaintiff submits in his declaration that Defendant Wilson threatened him with reprisal for filing grievances because Wilson knew Plaintiff submitted a grievance.  Response at 5.

**C.  March 31, 2008 Incident: Defendants Bostic and Austin**

It is undisputed that on March 31, Defendant Bostic escorted Plaintiff to and from his dental appointment.  Exh. M.  Defendant Bostic knew that Plaintiff had been involved in a use of force and observed that Plaintiff had marks on his mouth and a chipped tooth. Id.  Plaintiff did not have a swollen face or head or any other signs of injury.  Id.  After leaving the dental appointment, Bostic escorted Plaintiff back to his cell in the Y Dorm.  Id.

Plaintiff disputes the events that occurred during the return escort.  Defendant Bostic submits that during the return escort, Plaintiff did not act scared, make any statements about Defendant Austin, request protection, ask that Bostic delay bringing him to

the Y Dorm, or say anything about being afraid of being killed or injured.  Id.  Defendant Bostic submits that once they arrived in Y Dorm, Defendant Bostic saw Defendant Austin in the sally port. As a Shift Lieutenant, Defendant Austin's duties require that he make rounds of different dorms.  Defendant Bostic did not see Austin until she entered Y Dorm.  Austin did not speak with Plaintiff in the sally port, did not yell or reprimand Bostic, nor did he order her to leave the area and abandon her escort.  Motion at 9; Exhs. D, M.  Defendant Bostic did not leave Plaintiff in the Y Dorm sally port, did not go through the Y-1 door alone, and then meet Plaintiff at his cell door.  Defendant Bostic never heard Defendant Austin say any racial slurs.  Exh. M.

Plaintiff disputes the facts surrounding the return escort in his declaration and states "Defendant Austin did forcefully assault the Plaintiff Garcia by punching him in the mouth to bloody the Plaintiff's mouth and Defendant Bostic failed to protect the Plaintiff even though she witnessed the entire reprisal attack." Notably, Plaintiff's version of the event in his Amended Complaint and declaration are contradictory.  In the Amended Complaint, Plaintiff alleged that Bostic left Plaintiff alone with Defendant Austin per Austin's directive.  Amended Complaint at 7.

### D.  October 2009 Continuation: Defendant Austin

Defendant Austin submits that he never threatened Plaintiff. Exh. D.  If Plaintiff saw Defendant Austin at his cell front during

either 2008 or 2009, this would not be unusual because Austin's
duties as a Shift Lieutenant required that he make rounds of the
dorms.  Exh. D. Plaintiff does not address this incident in his
declaration.  Response at 1-5.  Thus, the Court deems Defendant
Austin's version of the facts as undisputed.

### V.  Applicable Law

**A.  Eighth Amendment**

**1.  Excessive Force**

Plaintiff alleges violations of the Eighth Amendment under the
United States Constitution.  See generally Complaint.  The Eighth
Amendment, which applies to the states through the Fourteenth
Amendment, can give rise to claims challenging the excessive use of
force.  Thomas v. Bryant, 614 F.3d 1288, 1305 (11th Cir.
2010)(reviewing categories of claims under the Eighth Amendment).
An excessive-force claim requires a two-prong showing: (1) an
objective showing of deprivation or injury that is "sufficiently
serious" to constitute a denial of the "minimal civilized measure
of life's necessities"; and, (2) a subjective showing that the
official had a "sufficiently culpable state of mind." Id. (citing
Farmer v. Brennan, 511 U.S. 825, 834 (1994)(other citations
omitted).  It is the "unnecessary and wanton infliction of pain"
caused by force used "maliciously and sadistically" for the very
purpose of causing harm that constitutes cruel and unusual
punishment.  Whitley v. Albers, 475 U.S. 312, 322 (1986).  Thus,

where an Eighth Amendment claim is based upon allegations of excessive force, the question turns on whether the prison guard's "force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005).

To determine whether force was applied "maliciously and sadistically," courts consider the following factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations and citations omitted). When considering these factors, the courts "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007)(citations omitted). The courts examine the facts as reasonably perceived by Defendants on the basis of the facts known to them at the time. Whitley v. Albers, 475 U.S. 312, 321 (1986).

Moreover, in the context of prison discipline, a distinction is made between "punishment after the fact and immediate coercive

-19-

measures necessary to restore order or security." <u>Ort v. White</u>, 813 F.2d 318, 324-325 (11th Cir. 1987).  When a prison's internal safety is of concern, courts conduct a more deferential review of the prison officials' actions.  <u>Williams v. Burton</u>, 943 F.2d 1572, 1575 (11th Cir. 1991)(citations omitted).  Indeed, "[t]hat deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches in prison discipline." <u>Whitley</u>, 475 U.S. at 322; <u>See</u> <u>also</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1979).

### 2.  Failure to Protect

The Supreme Court made clear that "prison officials have a duty . . . to protect prisoners from violence . . . ." <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994); <u>see</u> <u>also</u> <u>Doe v. Ga. Dep't of Corr.</u>, 245 F. App'x 899 (11th Cir. 2007).  A violation of the Eighth Amendment occurs when a prison official acts with deliberate indifference to a substantial risk of harm to an inmate.  <u>Farmer</u>, 511 U.S. at 828.  "Deliberate indifference is not the same thing as negligence or carelessness." <u>Maldonado v. Snead</u>, 168 F. App'x 373 (11th Cir. 2006)(citing <u>Ray v. Foltz</u>, 370 F.3d 1079, 1083 (11th Cir. 2004)).  "Merely negligent failure to protect" an inmate from an attack does not give rise to a § 1983 claim.  <u>Carter v. Galloway</u>, 352 F.3d 1346, 1350 (11th Cir. 2003).

A plaintiff must demonstrate that the defendant was aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists and that the prison official drew that inference. <u>Purcell v. Toombs County, Ga.</u>, 400 F.3d 1313, 1319-20; <u>Carter</u>, 352 F.3d at 1349. In other words, to show that an official had subjective knowledge, the court is to inquire whether the defendant was aware of a "particularized threat or fear felt by [the plaintiff]." <u>Id.</u> at 1350. "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment" and does not give rise to a constitutional violation. <u>Farmer</u>, 511 U.S. at 838. Whether an official had requisite knowledge is a question of fact that may be demonstrated by circumstantial evidence. <u>Id.</u> at 842.

**B.  First Amendment- Retaliation**

Prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. <u>Wright v. Newsome</u>, 795 F.2d 964, 968 (11th Cir. 1968)(per curiam). To prevail on a First Amendment retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. <u>O'Bryant v. Finch</u>,

-21-

637 F.2d 1207, 1212 (11th Cir. 2011)(internal quotations omitted);
Moton v. Cowart, 631 F.3d 1337, 1341-42 (11th Cir. 2011).  "To
establish causation, the plaintiff must show that the defendant was
'subjectively motivated to discipline' the plaintiff for exercising
his First Amendment rights."  Moton, 631 F.3d at 1341 (quoting
Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008)).

## VI.  Analysis

Defendants Anthony, Austin, Wilson, and Bostic move for
summary judgment as a matter of law as to the Eighth Amendment
excessive force claim, Eighth Amendment failure to protect claim,
and First Amendment retaliation claim.  Defendants argue that
Correctional Officer Hoopes' use of force was spontaneous and in
response to Plaintiff lunging at Hoopes.  None of the named
Defendants were present when Hoopes spontaneously took Plaintiff to
the ground, face first.  Defendants submit that none of them used
any amount of force on Plaintiff, except Defendant Anthony held
Plaintiff on the ground until the video camera Austin ordered to be
retrieved arrived.  Defendant Wilson was never present at any
point.  Defendants again raise the Heck[11] bar considering Plaintiff
received a disciplinary report and subsequent conviction related to
this use of force that has not been expunged.  Defendant Austin

---

[11]Heck v. Humphrey, 512 U.S. 477 (1994)(a convicted criminal
defendant cannot bring a section 1983 action that would
"necessarily imply the invalidity of his conviction or sentence"
unless he can prove the conviction or sentence has been
invalidated.)

denies punching Plaintiff on March 31 or ever threatening him thereafter.  And, Defendant Bostic denies failing to protect Plaintiff because the incident on March 31 never occurred and, as alleged in the Amended Complaint, is completely implausible because an inmate would never walk to his cell unescorted.

### A.  March 29, 2008 Use of Force Incident

The record reveals that the initial use of force involved Correctional Officer Hoopes, who is no longer a defendant in this action, taking Plaintiff down to the ground face first.  Plaintiff challenges Hoopes' use of force in his declaration, claiming that he was doing nothing wrong when Hoopes took him down to the ground face first.  Supra at 12-14.  However, Plaintiff received a disciplinary report for attempting to assault Correctional Officer Hoopes, which remains valid.  Id.  Any claim to the contrary, i.e. that Plaintiff did not attempt to assault Hoopes, would be barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  The use of force by Hoopes is not at issue in this action.

What remains at issue is whether the record contains a genuine issue of material fact as to the excessive use of force claim involving Defendants Austin, Anthony, and Wilson.  The Court finds the record does not contain a genuine issue of material fact.[12]  The

---

[12]The Court finds Plaintiff's excessive force claims against Defendants Austin, Anthony, and Wilson is not barred by Heck. Although Plaintiff now challenges the disciplinary infraction and guilty finding involving Correctional Officer Hoopes, the Amended
(continued...)

record shows neither a deprivation or injury that is sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities, nor that defendants had a sufficiently culpable state of mind.  The evidence of record reveals that Defendant Anthony responded to a body alarm activated by Correctional Officer Hoopes.  When Defendant Anthony arrived at the scene, he took over the custodial hold of Plaintiff on the ground until Defendant Austin, who was the Second Shift Lieutenant, and the video camera arrived.  The need for Anthony's application of force, to the extent a custodial hold constitutes force, stemmed from Plaintiff's attempted assault on Hoopes.  The custodial hold by Defendant Anthony was done to preserve order in the institution and remove Hoopes from any further engagement with Plaintiff.

It is undisputed that Defendant Austin did not use any force on Plaintiff.  Supra at 16.  To the extent Plaintiff attributes liability on Defendant Austin for directing Correctional Officers Anthony and Wilson to beat Plaintiff, the evidence of record shows this scenario is implausible.  First, Defendant Wilson was never present during any part of this incident because he was assigned as the Housing Officer in F Dorm.  Supra at 15-16.  Second, Plaintiff has stated his version of the events that transpired during the use

---

[12](...continued)
Complaint did not raise such a claim.  According to the Amended Complaint, Plaintiff only challenged the amount of force used, not the fact that it was used by Defendants.

of force on March 29, 2008 three different ways.  <u>See</u> Amended
Complaint; Exh. E (Inspector General Investigation Report);
Response at 1-5 (Plaintiff's declaration).   Third, Defendants
contend that the injuries Plaintiff sustained, including: a chipped
front tooth, a laceration under his left eye, scrape on his left
forehead, and a scrape on his upper lip are consistent with this
face-first take down by Hoopes and the Court agrees.  The injuries
Plaintiff sustained as evidenced by the medical record do not
coincide with the group beating until Plaintiff went unconscious
two times as Plaintiff describes.   Moreover, the fact that
Defendant Austin directed Defendant Anthony and Correctional
Officer Geremonte to escort Plaintiff to medical further shows that
the force applied was not malicious or sadistic, but done in a good
faith effort to restore or maintain order at the institution.
Besides Plaintiff's self-serving contentions in his declaration,
there is absolutely no other evidence that Defendants Wilson and
Anthony beat Plaintiff, and beat him again at the direction of
Defendant Austin, or that Defendant Wilson was even present when
the incident occurred.[13] At this stage of the proceedings the Court
does not make a credibility determination, or choose between

---

[13]Plaintiff did not submit any declaration of any inmate
witnesses and the Court is aware of at least one inmate declaration
he could have submitted.  Additionally, according to the Amended
Complaint, Plaintiff involved his family members in the incidents
that transpired and his family allegedly contacted various
correctional officials.   Plaintiff failed to include any
declarations from any of his family members.

conflicting evidence, <u>Bozeman</u>, 422 F.3d at 1267, but in this case the overwhelming evidence of record would not allow a reasonable jury to conclude that Plaintiff was beaten by Defendants Anthony and Wilson, or beaten at the direction of Defendant Austin. Accordingly, Defendants Austin, Anthony, and Wilson are entitled to summary judgment on Plaintiff's excessive use of force claim.

**B.  March 30, 2008 Retaliation Incident**

The summary judgment record does not show a genuine dispute of material fact regarding the First Amendment retaliation claim against Defendant Wilson.  Significantly, the record establishes that Defendant Wilson was not present at any point during the March 29, 2008 use of force on Plaintiff because he was assigned as the Housing Officer in the F Dormitory. <u>Supra</u> at 18.  Defendant Wilson disputes ever threatening Plaintiff about filing any inmate grievances concerning the March 29, 2008 use of force.  <u>Id.</u>  And, Defendant Austin submits that he never directed Wilson to threaten Plaintiff for filing grievances.  <u>Id.</u>

Assuming, <u>arguendo</u>, that Defendant Wilson had an interest in the March 29 incident and that he threatened Plaintiff about filing any inmate grievances, there is no causal relationship between the retaliatory action and the protected speech.  Defendant Wilson denies knowing that Plaintiff filed any inmate grievances concerning the March 29 use of force, and Plaintiff agreed during his deposition that he did not think Wilson knew that he filed a

-26-

grievance with the Inspector General on the day before. Considering Plaintiff already filed an inmate grievance with the Inspector General's Office concerning the use of force, Plaintiff acknowledges that there were no other inmate grievances necessary to file concerning the use of force. Exh. O at 191. Thus, the record lacks a causal connection between Defendant Wilson and the alleged retaliatory action. Consequently, the Court finds Defendant Wilsons' motion for summary judgment is due to be granted.

### C. March 31, 2008 Punching and Failure to Protect Incidents

The Court finds no genuine issue of material fact regarding Plaintiff's failure to protect claim. Defendant Bostic testifies that she remembered seeing Defendant Austin in the sally port during the return part of the escort with Plaintiff, but denies that she left Plaintiff alone with Defendant Austin or that anything transpired between Austin and Plaintiff. Supra at 20. Defendant Austin testifies that he did even recall seeing Plaintiff on March 31 and did not punch Plaintiff. Id.

Plaintiff's declaration and Amended Complaint contain contradictory versions of the events that transpired during the return escort. The Amended Complaint alleges that Defendant Bostic left Plaintiff alone with Defendant Austin, per Austin's directive, despite Plaintiff's request that Bostic not leave him because he was afraid, after which Austin punched Plaintiff in the mouth, and

-27-

he walked back to his cell unescorted.  Id.  Defendant Bostic
testifies that Plaintiff's version of the incident set forth in his
Amended Complaint is implausible because an inmate would never be
allowed to walk unescorted back to his cell.  Plaintiff's
declaration attached to his Response contains only conclusory terms
and claims that Bostic failed to protect Plaintiff and witnessed
the entire reprisal attack.  Id.  A dispute in the factual
allegations within Plaintiff's Amended Complaint and his
declaration filed in support of his Response opposing Defendants's
motions for summary judgment does not create a genuine issue of
material fact.  Here, drawing all reasonable inferences from the
record, particularly the fact that an inmate would not be permitted
to walk alone back to his cell, the record does not show that
Defendant Bostic was aware of specific facts from which a reference
could be drawn that a substantial risk of serious harm existed and
that she drew that inference.  Accordingly, the Court finds
Defendant Bostic's motion for summary judgment as to the failure to
protect claim and Defendant Austin's motion for summary judgment as
to the excessive use of force claim are due to be granted.

### D.  October 2009 Continuation

The Amended Complaint alleged that on an unspecified day in
October of 2009, Defendant Austin went to Plaintiff's cell and told
him he "was back" and threatened "to get" Plaintiff.  Amended
Complaint at 8.  Defendant Austin presented evidence that he did no

such thing.   Supra at 20.   Plaintiff presented no evidence to overcome the evidence of record.   Nevertheless, even if Plaintiff had presented evidence, verbal taunts are not sufficient to constitute a constitutional violation.   Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989).   Consequently, the Court grants Defendant Austin's motion for summary judgment as to the October 2009 claim.

ACCORDINGLY, it is hereby

**ORDERED**:

1.   The Clerk of Court shall strike Plaintiff's second response (Doc. #118-1).   The Court deems Plaintiff's initial response (Doc. #112) is the operative response.

2.   Plaintiff's "motion explaining why it appears Plaintiff is delaying legal litigation with the Defendants" (Doc. #134) construed to include a motion to appoint counsel is **DENIED.**

3.   The motions for summary judgment filed on behalf of Defendants Austin, Anthony, Bostic, (Doc. #87) and Wilson (Doc. #88) are **GRANTED.**   Judgment is entered in favor of Defendants Austin, Anthony, Bostic, and Wilson, and Plaintiff takes nothing.

4.   The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Fort Myers, Florida, on this __23rd__ day of January, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

sa: alj; Copies: All Parties of Record